Vick L. JOHNSON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 45S00–9610–CR–656.

Supreme Court of Indiana.

Oct. 29, 1997.

Marce Gonzalez, Jr., Merrillville, for Appellant.

Jeffrey A. Modisett, Attorney General, and Phillip D. Hatfield, Deputy Attorney General, Indianapolis, for appellee.

SHEPARD, Chief Justice.

A jury found appellant Vick L. Johnson guilty of felony murder for killing Cleotha and Anne Smith during the course of a robbery.[1] The trial court sentenced Johnson to two forty-year presumptive sentences, each enhanced by twenty years for aggravating circumstances, and ordered that the sentences be served consecutively. (R. at 92.) Johnson appeals his sentence. We affirm.

### I. Facts

The evidence at trial revealed that during February 1995, Johnson and Craig Mahone began discussing robbery as a joint project. By the second week of March, they had formulated a plan to rob Johnson's father-in-law, Cleotha Smith. (R. at 664.) On March 13, they decided to go forward with the plan, deciding that robbing Cleotha at home would be an "easier way." (*Id.*)

Johnson, his wife Latania, and Latania's three-year-old daughter Victoria lived with Latania's parents, Cleotha and Anne Smith, in a small home in East Chicago, Indiana. (R. at 178–80.) Johnson had lived with the Smiths long enough to know that Cleotha Smith had a habit of keeping several hundred dollars with him in case of emergencies. (R. at 664, 182–184.)

The murders of Anne and Cleotha Smith occurred sometime between 2:15 and 3:15 p.m. on March 13. (R. at 190–92, 138–40.) Latania was at work. Victoria was with her grandparents in the house. (R. at 138.)

Johnson later gave the police varying versions of his own involvement. He first said he was not present when the killings occurred, that his own role had merely been to make sure the Smiths' door was open so Mahone could enter and commit the robbery. (R. at 664.) He later said he was present when Mahone killed Cleotha with what appeared to be a foot long pipe. (*Id.*) He claimed to have then fled in panic after checking on his daughter, Victoria, to see if she was safe. (*Id.*) He acknowledged that he did nothing to try to help. (*Id.*)

The pants Johnson wore on March 13, 1995, were taken into evidence when the police detected blood on them. The Indiana State Police laboratory performed tests on the pants. (R. at 486.) Dried human blood was found. (R. at 487.) Subsequent DNA tests revealed that the blood on Johnson's pants had genetic profiles consistent with the blood of both victims. (R. at 545.)

Cleotha Smith died due to blunt force trauma to his head and face while Anne Smith died from blunt force trauma to her head combined with strangulation of her neck. (R. at 463–67.)

### II. Challenges to the Sentence

The Indiana Constitution gives the Supreme Court the power to review and revise criminal sentences. Ind. Const. art. VII, § 4. We exercise restraint in this review, under Indiana Appellate Rule 17(B), by revising only those sentences demonstrated to be "manifestly unreasonable in light of the nature of the offense and the character of the

1. Ind.Code Ann. § 35–42–1–1(2) (West Supp. 1996).

offender." Ind.Appellate Rule (17)(B); *Fointno v. State,* 487 N.E.2d 140, 145 (Ind. 1986). Sentencing decisions are otherwise left to the sound discretion of the trial court. *Hatchett v. State,* 503 N.E.2d 398, 405 (Ind. 1987).

In determining Johnson's sentence, the trial court stated:

> [The r]eason for the court imposing the maximum terms herein and ordering them to be served consecutively is that: (1) Defendant was on probation from Bell County, Texas for the crime of Delivering Cocaine wherein 10 years imprisonment was imposed & suspended and he was placed on 10 years probation; (2) Victims were both over 65 years of age; (3) They were physically infirm; (4) Victims were in their own home at the time of the murders and the apparent motive for said murder was robbery of approximately $300 to $400; (5) Victim were [sic] bludgeoned to death in as heinous a crime as this court has been involved; (6) Anything less than the maximum consecutive penalties would tend to depreciate the seriousness of these crimes; (7) Defendant is in need of rehabilitative and correctional treatment that can only be provided by long term confinement in a penal facility.

(R. at 92.) The trial court did not list any mitigating circumstances in its sentencing order. (*Id.*)

### A. Whether the Court Used Improper Aggravating Factors

Johnson claims that the trial court's use of aggravating factors (4) and (5) were improper and caused the court to levy a manifestly unreasonable sentence upon him.

■ Aggravating factor (4) states; "[The v]ictims were in their own home at the time of the murders and the apparent motive for said murders was robbery of approximately $300 to $400." (R. at 92.) Johnson claims this aggravating factor is a simple paraphrasing of the elements of the offense. A factor constituting a material element of a crime cannot be considered an aggravating circumstance in determining sentence. *Green v. State,* 424 N.E.2d 1014, 1015 (Ind. 1981). However, the murder and robbery statutes under which Johnson was convicted do not provide that proof requires the victims were in their own home as an element of the offenses. Ind.Code Ann. § 35–42–1–1(2) (West Supp.1996); Ind.Code Ann. § 35–42–5–1 (West 1986). We think that invasion of the victims' home, representing as it does a place of security in the minds of most, can plausibly be used by a trial court as an aggravating circumstance. A court is not limited to using only statutory aggravating factors to enhance sentences. Ind.Code Ann. § 35–38–1–7.1(d) (West Supp.1996); *Shields v. State,* 523 N.E.2d 411, 414 (Ind.1988).

■ The second portion of aggravator (4) states: "and the apparent motive for said murder was robbery of approximately $300 to $400". (R. at 92.) This is more troubling. To convict Johnson of murder under § 35–42–1–1(2), the jury necessarily had to find Johnson guilty of the elements of robbery. The robbery statute includes "takes property" as one of its elements. Ind.Code Ann. § 35–42–5–1 (West 1986). The fact that Johnson hoped to deprive Anne and Cleotha Smith of their money was thus improperly listed as an aggravating factor.

■ Aggravator (5) states: "[The v]ictims were bludgeoned to death in as heinous a crime as this court has been involved." (R. at 92.) Johnson claims this aggravator is improper because it does not state with specificity any facts which explain why Johnson's crime was sufficiently heinous to warrant a sentence enhancement. A trial court may not enhance a sentence by declaring a crime "heinous" without further articulating specific facts that suggest heinousness. *Edgecomb v. State,* 673 N.E.2d 1185, 1199 (Ind.1996), *reh'g denied.* Unlike the trial court in *Edgecomb,* however, the court here also noted a specific fact: that the victims were bludgeoned to death. The particular manner in which a crime is committed may serve as an aggravating factor. *Widener v. State,* 659 N.E.2d 529, 532 (Ind.1995).[2] The question is

---

**2.** In *Widener,* we held that the trial court's use of the fact that "defendant shot victim once, victim stopped resisting, and defendant smashed the gun and his hand through the car window and

thus whether the trial court's use of the lone word "bludgeoning" to describe Johnson's crime sufficiently articulates the aggravating aspects of the crime to qualify as a proper aggravating factor.

■ Some act which causes the death of a victim will always be traceable to the defendant in a murder conviction and, as noted above, the trial court cannot use an element of the crime alone as an aggravating factor. We conclude that the reference to "bludgeoning" is legally sufficient to describe why this crime might warrant more than the standard sentence. Bludgeoning is an especially time-consuming and violent act. In the present case one of the spouses who was eventually beaten to death most likely witnessed the death of the other since two individuals cannot be simultaneously killed in such a manner. The photographic evidence further shows that each victim was brutally struck several times, which indicates a certain type of malicious resolve in the actor which is not existent in some murders. (R. at 656, 657.)

■ Johnson also urges that the trial court must specifically and separately list the aggravating factors on which it relied to impose consecutive sentences. Here, the trial court *did* specifically state that it relied upon the factors enumerated in its sentencing order to support both the aggravated sentences and the consecutive sentences it levied upon Johnson. (R. at 92.) There is no constitutional or statutory prohibition against using the same factors both to enhance a sentence and to impose consecutive sentences. *Beatty v. State*, 567 N.E.2d 1134, 1137 (Ind.1991).

### B. Did the Court Improperly Fail to Consider Johnson's Alleged Limited Role?

Johnson bases several claims on his allegation that he was only an accomplice. Johnson first says that *Roche v. State*, 596 N.E.2d 896, 899 (Ind.1992), requires the trial court to consider that an alleged principal's actions, and not Johnson's, were the source of many of the aggravating factors the court used to enhance Johnson's sentence. At the heart of

this claim is the proposition that consecutive, enhanced sentences are manifestly unreasonable when only one of two perpetrators is prosecuted for the crime. Second, Johnson offers several claims of sentencing error which arise from his assertion that an unconvicted accomplice's actions exceeded the scope of his plan to rob Cleotha Smith.

These claims rest on the existence of Mahone. Both parties state in their briefs that Johnson acted in concert with an accomplice, but the record viewed in a manner most favorable to the verdict does not appear to require the trial court to find that Johnson acted with anybody at all. In other words, it appears that the jury and the sentencing judge could have found Johnson guilty of felony murder without using the aiding and abetting statute, Ind.Code § 35–41–2–4, as a mechanism for broadening the base of Johnson's criminal liability.

Several facts in the record would allow a finding that Johnson acted alone. Johnson stated in both his two confessions that he had planned to leave the door to the Smith's home open so that Craig Mahone could enter and rob Cleotha Smith. (R. at 664.) In Johnson's second confession, however, he acknowledged that he was present when Mahone was allegedly beating the Smiths with a lead pipe or another similar instrument. (R. at 666.) This altering admission seems like Johnson's attempt to explain away evidence that put him in close proximity to the actual deaths of Anne and Cleotha Smith. Johnson also stated that the reason he returned to the house after leaving the door unlocked was because he was worried about the safety of his daughter who was in the home. (*Id.*) However, Johnson's daughter was later discovered still inside the house by the first witness on the scene, Willie Mayfield, and by Officer Clarence R. Anderson, the first policeman to arrive. (R. at 138, 161.) Finally, Johnson changed his story about how he came to have the Smiths' blood on his jeans. He first said the blood was a result of his touching Anne when he found her dead and then wiping his hands on his jeans. (R. at 664.) The next day Johnson stood by this

shot her again" was a sufficiently particularized account of the reasons why defendant's act supported a sentence enhancement. 659 N.E.2d at 532.

explanation but added that he might also have Cleotha's blood on his clothing since he actually was present when Mahone struck Cleotha. (R. at 666.) The blood of both Cleotha and Anne was found by DNA analysis to be present on Johnson's jeans. (R. at 546.) Given these facts, a jury might well find Johnson guilty of felony murder even if it thought no accomplice existed as a matter of fact.

The trial judge did not make any explicit finding regarding the existence of an accomplice. And, the court did instruct on aiding and abetting. We will thus turn to Johnson's claim.

Johnson urges that because he was a mere "accomplice" our laws provide him with legal protections which might not be available to others who stand alone in their criminal liability. Johnson's claim that our case law regarding accomplice sentencing should cause us to reduce his sentence is unconvincing.

Under the common law, two general classes of criminals, neither of which relate directly to the meaning of the term "accomplice", were used to determine the nature and measure of an individual's culpability. A principal was one who either actually perpetrated the crime or who aided or abetted and was actively or constructively present at the time of the crime. An accessory was one who procured, counseled, commanded or abetted the principal, and who was absent when the latter committed the crime, or who received, relieved, comforted, or assisted the perpetrator after the crime had been committed. A principal could not be convicted as an accessory. 22 C.J.S. *Criminal Law* § 128 (1989).

■ The common law of criminal liability has been superseded by statute in Indiana, however, and the legal distinction between a principal and an accessory has ceased to exist. The language of Ind.Code § 35–41–2–4 which states, "[A] person who knowingly or intentionally aids, induces, or causes another person to commit an offense *commits* that offense ...", has been interpreted by this Court to mean that an actor who would have been considered an accessory under the common law now vicariously commits the actual offense. *Fisher v. State*, 468 N.E.2d 1365, 1369, (Ind.1984) (emphasis added); *Kappos v. State*, 465 N.E.2d 1092, 1095 (Ind.1984). These cases show that individuals convicted of felonies in Indiana are considered to have been convicted on the weight of their own actions even if the accomplice liability statute is utilized by the court or jury to determine guilt.

■ The general standard for reviewing the sentence imposed on an accomplice is thus the same as it is for principals: whether the sentence is "manifestly unreasonable in light of the nature of the offense and character of the offender." (App.R. (17)(B)). The standard provides no categorical benefit to an actor by virtue of his having been charged as an accomplice. Each actor is assessed on the facts available.

Johnson cites *Roche v. State*, 596 N.E.2d 896, 899 (Ind.1992), for the proposition that consecutive sentences upon one perpetrator may be manifestly unreasonable where the actual crime exceeds the scope of his original plan due to the actions of an uncharged accomplice. The holding and application in *Roche*, however, is actually detrimental to Johnson's argument. In *Roche*, the Court agreed that imposition of the same penalty upon a principal and accomplice may not be appropriate but then found that the jury was in the best position to weigh the evidence and assess the degree of culpability of the co-defendants for purposes of sentencing. *Id.*

Johnson also claims his sentence is manifestly unreasonable because the trial court did not consider that the scope of his original plan was exceeded by the acts of an accomplice. Reading the facts of the case most favorably to the verdict and even assuming the trial judge believed that an accomplice committed the actual killing, we are still unable to find Johnson could not have reasonably foreseen the violence that eventually occurred.

■ The criminal liability of an accomplice is not negated by the principal's commission of an offense greater in severity than the offense originally planned if the resulting offense is a probable and natural

consequence of the planned offense. *Tynes v. State*, 650 N.E.2d 685, 687 (Ind.1995). Johnson admitted that he was the instigator of the planned robbery and that he left the door to the Smiths' home unlocked with the intent that his accomplice would enter and rob the Smiths. (R. at 664.) Additionally, a day after Johnson's first confession in which he claimed to have not been present at the time the Smiths were killed, he admitted that he was present at the time of the murders and that he did nothing to help the Smiths as they were being beaten to death. (R. at 666.) The police also identified the Smiths' blood on Johnson's pants and shoes. (R. at 545.) Given this evidence, the trial judge was not compelled to find that Johnson was merely an accomplice who unwittingly became involved in actions beyond his control. Planning a robbery of a person in that person's own home is bound to create a risk that violence may ensue when the homeowner predictably attempts to protect himself and his family.

Johnson claims the fact that his alleged accomplice remains uncharged renders the imposition of consecutive sentences erroneous. Our law is otherwise. An accomplice may be tried and convicted when the proof of the underlying crime is sufficient despite the fact that the other actor is not prosecuted, not convicted, or even acquitted. Ind.Code Ann. § 35–41–2–4 (West 1986). It is not error for the State to try an accessory before trying the party who actually committed the crime. *Schmidt v. State*, 265 N.E.2d 219, 226, 255 Ind. 443, 455 (1970).

Johnson asserts that the recent case of *Edgecomb v. State*, 673 N.E.2d 1185 (Ind. 1996) stands for the proposition that an aggravated felony murder sentence is inappropriate where the appellant did not anticipate or encourage her accomplice to exceed the scope of the original plan. This misstates *Edgecomb*. The *Edgecomb* analysis was not categorical, i.e., all enhanced sentences ordered upon unwitting accomplices convicted of felony murder are presumed to be manifestly unreasonable. Rather, we performed the normal "manifestly unreasonable" balancing test required by Appellate Rule (17)(B) and found the trial court's sentence was manifestly unreasonable given the specific facts of *Edgecomb*, 673 N.E.2d at 1199.

### C. The Nature of the Offense and the Character of the Offender

Finally, Johnson claims the imposition of two consecutive, enhanced sentences is manifestly unreasonable in light of the nature of his offense and character. We conclude otherwise. The trial court found seven aggravating circumstances. They are nearly all supportable. Johnson alleges no mitigating factors. In Johnson's case, a 120–year sentence is not manifestly unreasonable.

### III. Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.