# FOR PUBLICATION



FILED
Nov 08 2013, 10:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**BRYAN M. TRUITT**
Bertig & Associates, LLC
Valparaiso, Indiana

**MATTHEW D. SOLIDAY**
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| RYAN R. SCHROEDER, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 64A03-1302-CR-39 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable Mary R. Harper, Judge
Cause No. 64D05-1201-FA-631

**November 8, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Ryan Schroeder appeals his convictions for five counts of Class A felony child molesting and his aggregate sentence for five counts of Class A felony child molesting, one count of Class C felony child molesting, seven counts of Class C felony child exploitation, one count of Class D felony theft, seven counts of Class D felony possession of child pornography, and two counts of Class D felony voyeurism. We affirm.

## Issues

Schroeder raises two issues, which we restate as:

    I.      whether the evidence is sufficient to sustain his Class A felony child molesting convictions; and

    II.     whether his fifty-four-year sentence is inappropriate in light of the nature of the offense and the character of the offender.

## Facts

In early 2010, twenty-four-year-old Schroeder and nineteen-year-old Tara Tryon worked together at a restaurant and started a relationship. Soon, Schroeder started asking Tryon to take sexual pictures of herself, and she complied. Schroeder then started asking her to steal other women's underwear. In April 2010, Tryon started babysitting for K.B.'s children, five-year-old J.B. and two-year-old A.B. Schroeder repeatedly asked Tryon to perform sexual acts on the children and take pictures of the acts. Tryon complied and started sending him nude pictures of J.B. and A.B. and pictures of herself molesting A.B. Tryon performed the acts to "keep" Schroeder in her "life." Tr. p. 350. Schroeder asked for more pictures every time she babysat for the children. Tryon

2

stopped babysitting the children in approximately June 2010. However, Schroeder continued requesting that Tryon send him pictures, including pictures of her having sex with other men and pictures of other women in bathroom stalls. Schroeder and Tryon talked about having children, and Schroeder said that he wanted to be the first to have sexual intercourse with their daughters. He also wanted Tryon to get pregnant by another man so that he could have sexual intercourse with the child.

In late September 2011, Tryon flew to Florida to see Schroeder, who was in the military at that time, but they argued, and Tryon had become unhappy with the relationship. In mid-October, Tryon ended the relationship, and Schroeder threatened to commit suicide. Tryon reported the suicide threat to Schroeder's commanders. On October 15, 2011, Schroeder texted Tryon, "u will hate me soon enough." State's Ex. 16.

The next day, Schroeder contacted an ex-girlfriend, Pam Spengler, and told her that Tryon had sent him pictures of a child molestation and that he did not know what to do with them. He asked Spengler to anonymously report the molestation and gave her the pictures and videos. Spengler then made an anonymous report of child molestation to the LaPorte County Sheriff's Department. Spengler identified Tryon as the perpetrator of the molestation, and she mailed an "SD card of the images and video" to the sheriff's department. Tr. p. 52. Spengler later identified herself to the sheriff's department and identified Schroeder as the person who gave her the images.

Schroeder was interviewed in Florida, and a search of his military quarters revealed an external hard drive that contained a series of extensively labeled folders. The folders contained photos and videos, including child pornography and voyeurism. The

3

folders contained the photos and videos of Tryon molesting A.B. For example, one photo of Tryon molesting A.B. was labeled "New folder/sluts/tara/[K.B.'s]house/[A.B.] 2/04271941.jpg" State's Ex. 10B.

The investigation into Schroeder revealed that he also had similar relationships with other women, including Adrienne Harris and A.F., during the same time period. Harris met Schroeder while they were in the military in January 2011 and started a relationship with him. Schroeder also asked Harris to take pictures of other women in the shower, using the bathroom, and in dressing rooms, and Harris did so. Eventually Harris was transferred to Virginia, and Schroeder was transferred to Florida. Schroeder then began expressing an interest in seeing pictures of Harris's two-year-old daughter. In June 2011, Harris began sending nude pictures of her daughter to Schroeder. Schroeder would threaten Harris and "blackmail" her if she did not comply with his requests. Tr. p. 218. Schroeder asked Harris to have sex with other men, take pictures, and send him the pictures. He also asked Harris to touch her daughter sexually and photograph or videotape the molestations. Schroeder also talked about having a child with Harris and said "that he wanted to be able to do whatever he wanted with the kid." Id. at 242.

Schroeder eventually told Harris that he turned Tryon in because he was mad at her. Harris asked Schroeder "how all this got started." Id. at 235. Schroeder said that he has "always had a curiosity about kids that he fulfilled through ex-girlfriends." Id. Schroeder discussed Tryon with Harris and said that "he had asked her to send him pictures of the boy." Id. at 242.

4

The investigators also learned that Schroeder started dating A.F. in April 2010, when she was sixteen years old. After they started dating, Schroeder asked A.F. for sexual pictures and videos of herself. He also started demanding pictures of her friends and her mother. A.F. took nude pictures of her mother without her mother's permission and sent them to Schroeder. A.F. also took pictures and videos of other women under bathroom stalls at Schroeder's request. Schroeder told A.F. that he wanted to have a lot of kids and that "he wanted to be the first person that his daughter slept with." Id. at 320. Schroeder told A.F. that she "wasn't good enough for him" and that he was going to leave her if she did not comply with his demands. Id. at 310.

Eventually, Tryon was arrested and charged with five counts of Class B felony child molesting, one count of Class C felony child molesting, and seven counts of Class C felony child exploitation.[1] The State charged Schroeder with five counts of Class A felony child molesting, one count of Class C felony child molesting, seven counts of Class C felony child exploitation, one count of Class D felony theft, seven counts of Class D felony possession of child pornography, and two counts of Class D felony voyeurism. The child molesting, child exploitation, theft, and one of the voyeurism charges were based on his accomplice liability with Tryon as the principal. The other voyeurism charge was based on his accomplice liability with A.F. as the principal. Ultimately, A.F. was not charged for her conduct, and she testified against Schroeder.

---

[1] At the time of Schroeder's trial, the charges against Tryon had not been resolved. On appeal, Schroeder submitted copies of Tryon's plea agreement and sentencing order in Appellant's Appendix. However, those documents were not part of the record on appeal, and the State filed a motion to strike the documents. By a separate order, we grant the State's motion to strike. Even if we were to take judicial notice of the records, as Schroeder requests, the outcome here would not change.

Harris pled guilty in federal court to one count of production of child pornography, and she is serving twenty-five years in federal prison. She also testified against Schroeder.

Schroeder filed a motion to dismiss Counts 1 through 5, the Class A felony child molesting charges. He argued that, under the accessory statute, he could only be convicted of a Class B felony because Tryon was under twenty-one years old. He also argued that Counts 1 through 5 should be dismissed because they violated the Privileges and Immunities Clause of the Indiana Constitution and the Equal Protection Clause of the Fourteenth Amendment. The trial court denied Schroeder's motion.

A jury found Schroeder guilty as charged. As aggravators, the trial court found a significant impact on the victims' family, the tender age of A.B, Harris and Tryon's positions of trust, the fact that Schroeder had ample time to reflect on his actions but continued to repeat the conduct, and Schroeder's complicated scheme to obtain a library of child pornography. The trial court also found Schroeder's criminal history as a minimal aggravator. The trial court rejected Schroeder's proposed mitigators. The trial court then sentenced Schroeder to concurrent forty-five-year sentences for each of the Class A felony child molesting convictions, concurrent six-year sentences for each of the Class C felony convictions, concurrent three-year sentences for the Class D felony theft and possession of child pornography convictions, and concurrent two-year sentences for the Class D felony voyeurism convictions. The trial court ordered that the forty-five-year sentences be consecutive to the six-year Class C felony sentences and also consecutive to the Class D felony convictions for an aggregate sentence of fifty-four years. Schroeder now appeals.

6

## Analysis

### I. Sufficiency of the Evidence

Schroeder argues that the evidence is insufficient to sustain his convictions for Class A felony child molesting. Schroeder does not challenge his remaining convictions. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The offense of child molesting is defined by Indiana Code Section 35-42-4-3(a), which provides: "A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony." The offense is a Class A felony if "it is committed by a person at least twenty-one (21) years of age." Ind. Code § 35-42-4-3(a)(1). Schroeder was charged with Class A felony child molesting for "knowingly or intentionally aid[ing], induc[ing], or caus[ing] Tara Tryon to commit the offense of Child Molesting, as she knowingly or intentionally performed or submitted to sexual intercourse or deviate sexual conduct with a child under fourteen (14) years of age . . . ." Appellant's App. pp. 32-34.

According to Schroeder, the evidence is insufficient because he was charged with a Class A felony rather than a Class B felony. Schroeder notes that Tryon was less than twenty-one years old, and the offense she committed was a Class B felony. Schroeder

7

was charged with a Class A felony because he was twenty-four years old. However, he argues that, by aiding Tryon, he committed the same offense that she committed, i.e., a Class B felony, not a Class A felony.

We disagree with Schroeder's interpretation of the relevant statutes. Schroeder confuses the offense with the offense's degree, grade, or classification. Under the accomplice liability statute, "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense . . . ." Ind. Code § 35-41-2-4. Our supreme court has noted that "there is no separate crime of being an accessory to a crime or aiding and abetting the perpetrator of a crime; rather, a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime." Sanquenetti v. State, 727 N.E.2d 437, 441 (Ind. 2000). Under the accomplice liability statute, "'an actor who would have been considered an accessory under the common law now vicariously commits the actual offense,' and 'individuals convicted of felonies in Indiana are considered to have been convicted on the weight of their own actions even if the accomplice liability statute is utilized by the court or jury to determine guilt.'" Id. (quoting Johnson v. State, 687 N.E.2d 345, 349 (Ind. 1997)). Furthermore, "[a]n accomplice may be tried and convicted when the proof of the underlying crime is sufficient despite the fact that the other actor is not prosecuted, not convicted, or even acquitted." Id. "Under the statute, the individual who aids another person in committing a crime is as guilty as the actual perpetrator." Id.

The offense that Tryon committed was performing deviate sexual conduct with a child under fourteen years of age. I.C. § 35-42-4-3(a). Tryon's offense was classified or

graded as a Class B felony due to her age. See id.; see also 8 IND. LAW ENCYC. Criminal Law § 4 (discussing that the term "degree of crime" denotes a particular grade of crime more or less culpable than another grade of the same offense). Schroeder vicariously committed the actual offense of child molesting and, regardless of Tryon's Class B felony charge, his offense was properly classified as a Class A felony due to his age. We conclude that, to prove Schroeder's accomplice liability for child molesting, the State was required to show that he was at least twenty-one years old and that he knowingly or intentionally aided, induced, or caused Tryon to perform deviate sexual conduct with A.B., who was less than fourteen years old. See I.C. §§ 35-424-3, 35-41-2-4. The State presented sufficient evidence to meet its burden.

## II. Inappropriate Sentence

Schroeder argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender.[2] Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. Id. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Under this rule, the burden is on the

---

[2] The State interpreted Schroeder's argument in his appellant's brief as questioning the validity of the various aggravators. In his reply brief, Schroeder clarified that he was only challenging the sentence under Indiana Appellate Rule 7(B). Thus, we address only the appropriateness of the sentence.

9

defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The nature of the offense is that Schroeder persuaded Tryon to molest two-year-old A.B. and send him pictures and videos of the offenses. Over the three months that Tryon babysat for A.B. and his sister, Schroeder would specify exactly what actions Tryon should perform, and he was aroused by the pictures and videos sent to him. At the same time that he was convincing Tryon to send him pictures and videos, he was also persuading other women, including A.F. and Harris, to do the same. Schroeder also persuaded Tryon and A.F. to photograph unsuspecting women in public restrooms, dressing rooms, and their own homes. Schroeder saved the pictures and videos and created an extensively labeled library on an external hard drive. The trial court properly described Schroeder and Tryon as "horrid, [vile], illegal, disgusting, sexual perpetrators."

10

Sent. Tr. p. 23. We find Schroeder's argument that the nature of the offense is less repulsive because A.B. was too young to remember the molestations unpersuasive. Further, we find Schroeder's use of Tryon's position of trust to be an appropriate consideration in reviewing the nature of the offense.

Schroeder's character also does not warrant a reduction in his sentence. The evidence showed that Schroeder turned Tryon in to the police because he was mad at her, not because he objected to the child molestations and child pornography. In fact, he had been in possession of the child pornography for quite some time and had created an extensive library of photographs and videos. Schroeder also told Tryon, A.F., and Harris that he wanted to have sexual contact with his future children. At sentencing, he expressed no remorse for his own actions and continued to blame the women in his life. He claimed that his only crime was not reporting the molestations fast enough. The evidence shows otherwise. Given the evidence presented, we conclude that Schroeder's fifty-four-year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

## Conclusion

The evidence is sufficient to sustain Schroeder's convictions for the Class A felony child molestation, and his fifty-four-year sentence is not inappropriate. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.

11