Stanley D. McKNIGHT, Appellant,

v.

STATE of Indiana, Appellee.

No. 45S03–9511–CR–1291.

Supreme Court of Indiana.

Nov. 16, 1995.

James F. Stanton, Superior Court of Lake County, Appellate Division, Crown Point, for appellant.

Pamela Carter, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for appellee.

ON PETITION TO TRANSFER

DeBRULER, Justice.

Appellant was charged with Murder and Assisting a Criminal. Ind.Code Ann. § 35–42–1–1 (West Supp.1992); Ind.Code Ann. § 35–44–3–2 (West 1986). A jury acquitted him of the murder charge, but found him guilty of Assisting a Criminal, a Class C felony, and sentenced him to seven years. Appellant then filed an appeal, claiming that because the principal in the alleged crime had already been acquitted in a separate trial, his conviction could not stand. In a memorandum decision, the Indiana Court of Appeals affirmed appellant's conviction on the Assisting a Criminal charge. This is an appeal from that decision. Transfer is granted. Ind.Appellate Rule 11(B)(2).

### Facts

On February 21, 1992, at about 7:30 p.m., Judi Ramirez, Mark Krajewski, and appellant Stanley McKnight arrived at Michael and Cindy Adams' trailer. Together with Cindy Adams, wife of Michael Adams, they began drinking beer and schnapps. At about 8:15 p.m., Michael Adams arrived at the trailer and joined them in the drinking. Both Adams and Krajewski quickly became intoxicated to the point of slurring their speech and losing balance. Krajewski downed several bottles of schnapps, while Adams did likewise with a bottle of brandy. Krajewski eventually made himself sick and vomited in the bathroom of the trailer.

When Krajewski returned to the group, he began trading insults with Cindy Adams. He repeatedly called her "a whore," "a bitch," and "a slut," then clumsily lunged at

her. Michael Adams then grabbed Krajewski and took him outside. Appellant followed. When Adams and appellant returned to the trailer, they told Ramirez that Krajewski had passed out and was in appellant's car. Everyone but Krajewski returned to the trailer and went to sleep.

The next morning, Adams and appellant went out to the car and found Krajewski dead. Adams went outside and came back in the trailer saying, "Stan, there's a stiff in your car. I got to call off work today because I stabbed him in the heart last night." Appellant then checked the body for himself and returned to the trailer saying, "He's dead."

Together, Adams, Ramirez, and appellant took Krajewski's corpse by car to Benton County. Once there, Adams and appellant dumped the body into a cornfield.

Lake County police officers arrested Adams and appellant at the trailer on Feb. 22, 1992. After being advised of his rights, appellant told a Lake County detective that he did not kill anyone and that Adams struck Krajewski twice. He also said that they had taken Krajewski's body south, near Indianapolis. Appellant was then taken to the Lake County Police Department. He later accompanied some officers to Benton County and led them to Krajewski's body.

Appellant's written and oral statements were admitted into evidence at trial. In those statements, appellant admits to helping Adams put Krajewski in the car and helping Adams dispose of the body, but denies having killed or having helped kill Krajewski.

Krajewski's cause of death was established by a stipulation to a pathologist's written report. The cause of death was acute blood loss caused by four stab wounds—two to the abdomen, one to the chest, and one to the left elbow. The pathologist also reported a concentration of ethanol (grain alcohol) in Krajewski's blood.

Appellant claims that his conviction as an accessory under the Assisting a Criminal statute should be overturned and his sentence vacated because the principal was acquitted of the alleged murder in a separate jury trial before appellant's conviction. The Assisting a Criminal statute itself reads as follows:

A person not standing in the relation of a parent, child, or spouse to another person who has committed a crime or is a fugitive from justice who, with intent to hinder the apprehension or punishment of the other person, harbors, conceals, or otherwise assists the person commits assisting a criminal, a Class A misdemeanor. However, the offense is:

(1) a Class D felony if the person assisted has committed a Class B, Class C, or Class D felony; and

(2) a Class C felony if the person assisted has committed murder or a Class A felony, or if the assistance was providing a deadly weapon.

Ind.Code Ann § 35–44–3–2 (West 1986). Because the statute's language is silent on the issue before us, we first look to the common law of accessory criminal liability from which both the Assisting a Criminal statute and the Aiding, Inducing, or Causing statute arise.[1]

## I. Accessory Liability at Common Law

The common law created two categories of criminal offenders: principals and accessories. *Principals* were those perpetrators who were found to be present at the time of the criminal act. This category was further split into two subgroups. An offender was a *principal in the first degree* if he was the absolute perpetrator of the crime. 3 W. Blackstone, Commentaries *34. A *principal in the second degree* was an offender who was either actively or constructively "present, aiding, and abetting the act to be done." *Id.* The second group of offenders, called

---

1. The Aiding, Inducing or Causing statute is based on accomplice theory and forbids many acts which would make one liable as an accessory before the fact at common law. Its language is as follows:

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense *commits that offense,* even if the other person:

(1) has not been prosecuted for the offense;
(2) has not been convicted of the offense; or
(3) has been acquitted of the offense.
Ind.Code Ann. § 35–41–2–4 (West 1986) (emphasis added).

*accessories,* were those who were neither the chief actors in the offense nor present at its performance, but were in some way concerned therein, either before or after the offense committed. *Id.* at \*35.

Just as the category of principals was split in two groups, so too was the category of accessories. An *accessory before the fact* was one who

> being absent at the time of the crime committed, doth yet procure, counsel, or command another to commit a crime. Herein absence is necessary to make him an accessory; for if such procurer, or the like, be present, he is guilty of the crime as principal.

Blackstone at \*36. On the other hand, an *accessory after the fact* was a person who "knowing a felony to have been committed, receives, relieves, confronts, or *assists* the felon." *Id.* at \*37 (emphasis added). See also Annotation, *Acquittal of Principal—Trial of Accessory,* 9 ALR 4th 972 (1981). Although the accessory was not found to be present during the criminal act, his participation required him to suffer the same punishment as a principal whether the accessory's participation occurred before or after the alleged crime.

Principals and accessories were not accorded the same treatment in all respects, however. For instance, absent waiver, "no man could be tried as an accessory till after the principal was convicted, or, at least, he must have been tried at the same time with him; though that law is now much altered...." Blackstone at \*40. Like the current Assisting a Criminal statute, the criminal liability of the accessory was linked to that of his principal at common law. The jurist writes further that a fear of inconsistent verdicts inspired this rule:

> [I]f the principal had never been indicted at all, had stood mute, had challenged ... jurors peremptorily, had claimed the benefit of clergy, had obtained a pardon, or had died before the attainder; the accessory in any of these cases could not be arraigned; for *non constitit* whether any felony was committed or no, till the principal had been attainted; and it might so happen that the accessory should be convicted one day, and

the principal acquitted the next, which would be absurd.

Blackstone at \*323. In the present case, appellant faces a similar absurdity. Appellant stands convicted of assisting a criminal that a separate jury had acquitted before appellant's conviction. Logic alone seems enough to bar appellant's conviction. Although the Legislature has modified the common law rule against trying *accessories before the fact* before the principal, it has yet to similarly modify the language of the Assisting a Criminal statute.

## II. Changing Treatment of Accessories

Several commentators have recommended that criminal liability as an accessory after the fact be treated as a crime of obstruction of justice rather than a crime based on an accomplice theory of criminal liability. See Model Penal Code and Commentaries § 2.06, comment 1 (1985). The current versions of both the Assisting a Criminal statute and the Aiding, Inducing, or Causing statute have abandoned the common law terms of principal and accessory.

Even with this change in terminology in the Assisting a Criminal statute, the statute has not been completely divorced from its common law origins, however. Though the statute no longer makes the accessory after the fact guilty of the *same* crime as the principal, his guilt is still contingent on a finding of the degree of his principal's guilt. Both the internal logic of the statute—that the accessory's criminal liability increases with the principal's criminal liability—and the practical absurdity of finding an accessory guilty of assisting a person who was found not be a criminal in a trial on the merits militate against such a reading of the statute. Logic alone would seem to require that one cannot be convicted of assisting a criminal if there is no criminal to assist.

█ Unlike the Aiding, Inducing or Causing statute, which explicitly changes the common law rule that a principal must be tried before an accessory, the Assisting a Criminal statute is silent on the issue. Its language still echoes Blackstone's definition of accessory after the fact and the legislature

has yet to except it from the common law rule. As this Court has stated,

> [w]hen the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication.

*Bartrom v. Adjustment Bureau, Inc.* (1993), Ind., 618 N.E.2d 1, 10. Moreover, because it is a penal statute, it is to be strictly construed against the State, with the final objective of determining and effecting the legislative intent. *Spangler v. State* (1993), Ind., 607 N.E.2d 720, 723. Given the statutory language and the presumed knowledge of the Legislature, the Assisting a Criminal statute therefore has not received explicit exception from the common law rule requiring conviction of the principal before convicting his accessory.

### III. Case Law

The common law, statutory interpretation, and logic are not our only guides. Though the precise question this case presents is a question of first impression under this current version of the statute, this Court has dealt with similar issues in the past. When necessary, the doctrine of mandated consistency has been invoked to avoid inconsistent convictions and findings under statutes having the same common law origin as the current Assisting a Criminal statute.

In *McCarty v. State* (1873), 44 Ind. 214, the State tried an accessory before the fact before his principal for assault and battery. During the accessory's trial and before a judgment was rendered, the principal was acquitted in a separate jury trial. The Court overturned the accessory's conviction. In so doing, the Court stated the common law position:

> The leading doctrine in respect to an accessory is, that he follows, like a shadow, his principal. He can neither be guilty of a higher offense than his principal; nor guilty at all, as accessory, unless his principal is guilty.... So, according to the general doctrine, not only a man cannot be guilty as an accessory unless there is a

principal who is guilty; but also he cannot be convicted except jointly with or after the principal, whose acquittal acquits him. *Id.* at 215 (quoting 1 Bishop Crim.Law, secs. 666, 667). The statute at issue in *McCarty*, like the Assisting a Criminal statute in the present case, was silent on the question of whether an accessory before the fact could be convicted even after the principal had been acquitted.

Later, in *Combs v. State* (1973), 260 Ind. 294, 295 N.E.2d 366, an accessory claimed that his principal's plea of guilty to malicious trespass barred his later conviction in a separate jury trial for second degree burglary. Emphasizing the difference between a finding on the merits and the acceptance of a guilty plea, this Court denied appellant's claim because

> the principal in this case was not *acquitted* of any wrongdoing, or found guilty of some lesser offense, after a trial on the merits, but rather entered a plea of guilty to a charge of malicious trespass. We believe that in the area of mandated consistency between principal's conviction and accessory's conviction there is a recognizable and legitimate difference between the assumptions which may arise from an acquittal or a finding of guilt on a lesser charge after a trial on a greater, and the acceptance of a plea of guilty by a court.

*Combs v. State* (1973), 260 Ind at 301–02, 295 N.E.2d at 370 (emphasis added). That same year, this Court extended the application of mandated consistency doctrine to accessories after the fact. In *Schmidt v. State* (1973), 261 Ind. 81, 300 N.E.2d 86, *reh'g denied,* the Court held that an accessory after the fact could not be convicted of first degree murder after the only possible principal was convicted in a jury trial only of manslaughter. The Court reduced the accessory's conviction to conform to that of her principal by again invoking the doctrine of mandated consistency:

> In this case both petitioner and the principal to the crime were convicted after separate jury trials on the merits. Both were charged and tried for the offense of first degree murder. The underlying crime in the case of the accessory, the petitioner

here, was established as murder, while in the case of the principal, it was found to be manslaughter. This is the legally contradictory situation which was considered in *Combs, supra,* and in which we must impose a consistency on the findings of the respective trials.

*Schmidt v. State* (1973), 261 Ind. at 83, 300 N.E.2d at 87–88; see also *Davis v. State* (1977), 267 Ind. 152, 368 N.E.2d 1149. Thus, though this is a question of first impression, precedent accords with the common law, logic, and this Court's past interpretation of criminal statutes.

The State argues that the language of the Assisting a Criminal statute shows that the mandated consistency doctrine should no longer apply to cases in which a defendant is found guilty of Assisting a Criminal. We do not agree. Though the statute does not make the person found guilty of assisting a criminal guilty of the same crime as the principal, the classification of the crime is still dependent on the level of guilt of the person assisted. While the State may argue that those acts which would formerly make a person guilty as an accessory after the fact are more properly characterized under an obstruction of justice theory rather than an accomplice liability theory, the statute is similar enough to its former versions to merit treatment under the mandated consistency doctrine. When an accessory after the fact is found guilty after the alleged principal is acquitted in a separate trial, we must mandate consistency between the two verdicts.

### CONCLUSION

Accordingly, the conviction is reversed and the cause is remanded to the trial court with instructions to discharge appellant.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.