### Kenny D. "Cotton" SANQUENETTI Defendant–Appellant,

v.

### STATE of Indiana, Plaintiff–Appellee.

### No. 83S00–9802–CR–88.

Supreme Court of Indiana.

April 14, 2000.

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The defendant-appellant, Kenny D. Sanquenetti, appeals his convictions and sentences for the March 8, 1997, choking and

stabbing murders[1] of Brenda M. Cunningham and Christal J. Davis. In this direct appeal, he presents two claims of error: (1) that the accomplice liability statute, as applied in this case, violates the Privileges and Immunities Clause of the Indiana Constitution; and (2) that the trial court erred in imposing consecutive sentences without finding an aggravating circumstance.

### I. Accomplice Liability Statute

■ The defendant first challenges his conviction for the murder of Davis, contending that the accomplice liability statute, although not facially unconstitutional *per se*, violates the Privileges and Immunities Clause of the Indiana Constitution as applied in his case. The defendant argues that this statute is unconstitutional because it allows him to be convicted of murder for aiding in the killing of Davis, even though his accomplice, Paul Steven Mills, who the defendant contends actually killed Davis, was convicted of involuntary manslaughter in a separate trial.[2] Thus, the defendant argues that, by allowing this result, the statute allows the "accessory" to be convicted and punished for a greater offense than the "principal" and thus that the statute impermissibly grants the "principal" the privilege of being convicted of a lesser crime than the accessory. The de-

fendant does not challenge the sufficiency of the evidence supporting the conviction.

■ The statutory provision, commonly referred to as the accomplice liability statute, provides:

A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:

(1) Has not been prosecuted for the offense;

(2) Has not been convicted of the offense; or

(3) Has been acquitted of the offense.

IND.CODE § 35–41–2–4. The present version of this statute, which became effective October 1, 1977, departs from common law and prior statutory law regarding principals and accessories. *See* IND.CODE § 35–1–29–1 (repealed); IND.CODE § 35–1–29–3 (repealed). We have noted that the current statute supersedes the common law of criminal liability and thus that the legal distinction between a principal and an accessory has ceased to exist. *Johnson v. State*, 687 N.E.2d 345, 349 (Ind.1997); *McKnight v. State*, 658 N.E.2d 559, 560–61 (Ind.1995). Because the common law distinction between principal and accessory is no longer viable, the defendant's reliance on these distinctions is ill-founded,[3] and we

---

1. IND.CODE § 35–42–1–1.

2. The defendant has petitioned us to take judicial notice of certain facts related to Mills's prosecution, conviction, and sentence, and has submitted certified copies of Mills's chronological case summary, his charging information, and the verdict form signed by the jury foreman. Evidence Rule 201(a) permits courts to take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." We grant his request.

3. In arguing that the statute violates the Equal Privileges and Immunities Clause, the defendant relies heavily on the superseded common law distinction between accessories

and principals and the rules that applied to them. Furthermore, even if this body of law were still viable, the defendant's claim that he was an accessory is problematic. Regarding the common law designations, we have said:

Under the common law, two general classes of criminals, neither of which relate directly to the meaning of the term "accomplice," were used to determine the nature and measure of an individual's culpability. A principal was one who either actually perpetrated the crime or who aided or abetted and was actively or constructively present at the time of the crime. An accessory was one who procured, counseled, commanded or abetted the principal, and who was absent when the latter committed the crime, or who received, relieved, comforted, or assisted the perpetrator after the crime had been committed.

*Johnson*, 687 N.E.2d at 349. We have also stated:

will analyze the defendant's claim under the law as it presently stands and under the terms it employs.

As a preliminary matter, we note that the defendant, in support of his equal privileges and immunities claim, cites the common law doctrine of mandated consistency as illustrative of the equality and consistency required under the law. In the last three decades, this Court has considered the application of this common law doctrine, which required that when a principal and an accessory are tried separately, the accessory cannot be convicted of a crime greater than that of which the principal is convicted. *See, e.g., McKnight,* 658 N.E.2d at 562–63 (discussing cases and applying the doctrine under the assisting a criminal statute); *Rufer v. State,* 274 Ind. 643, 647, 413 N.E.2d 880, 882 (1980); *Jewell v. State,* 272 Ind. 317, 320–22, 397 N.E.2d 946, 947–48 (1979); *Davis v. State,* 267 Ind. 152, 158–59, 368 N.E.2d 1149, 1152 (1977); *Wright v. State,* 266 Ind. 327, 342–43, 363 N.E.2d 1221, 1229–30 (1977); *Schmidt v. State,* 261 Ind. 81, 83, 300 N.E.2d 86, 87–88 (1973); *Combs v. State,* 260 Ind. 294, 301, 295 N.E.2d 366, 370 (1973) ("[W]here there has been two separate judicial determinations on the merits of the respective cases, and where they are contradictory, the law will impose a consistency to their findings."). *See also McCarty v. State,* 44 Ind. 214, 215–17 (1873).

However, with the exception of *McKnight,* the facts underlying these decisions occurred prior to the date in 1977 when the accomplice liability statute became effective, and, in these decisions, the principles of the common law and the defendant's adjudicated designation as a principal or an accessory governed. *See Rufer,* 274 Ind. at 647, 413 N.E.2d at 882 (involving a defendant convicted as an accessory before the fact); *Jewell,* 272 Ind. at 320–22, 397 N.E.2d at 947–48 and 261 Ind. 665, 309 N.E.2d 441 (1974) (involving a defendant convicted as an accessory before the fact); *Davis,* 267 Ind. at 158–59, 368 N.E.2d at 1152 (involving a defendant convicted as an accessory before the fact); *Wright,* 266 Ind. at 342–43, 363 N.E.2d at 1229–30 (involving a defendant charged as a principal and a jury instructed on accessory liability); *Schmidt,* 261 Ind. at 83, 300 N.E.2d at 87–88 (involving a defendant convicted as an accessory); *Combs,* 260 Ind. at 301–03, 295 N.E.2d at 370–71 (involving defendant convicted as an accessory); *McCarty,* 44 Ind. at 215–17 (involving defendant convicted as an accessory before the fact). In the only exception we find, this Court in *McKnight* applied the doctrine of mandated consistency in the context of the "assisting a criminal" statute, IND.CODE § 35–44–3–2, not in the context of the accomplice liability statute, IND.CODE § 35–41–2–4, specifically finding that, unlike the accomplice liability statute, the "assisting a criminal" statute had not received explicit exception from the common law rule. *See McKnight,* 658 N.E.2d at 561–62.

■ Just as the accomplice liability statute supersedes the common law of criminal liability, abandoning the common

The common law created two categories of criminal offenders: principals and accessories. *Principals* were those perpetrators who were found to be present at the time of the criminal act. This category was further split into two subgroups. An offender was a *principal in the first degree* if he was the absolute perpetrator of the crime. 3 W. Blackstone, Commentaries *34. A *principal in the second degree* was an offender who was either actively or constructively "present, aiding, and abetting the act to be done." *Id.* The second group of offenders, called *accessories,* were those who were neither the chief actors in the offense nor present at its performance, but were in some way concerned therein, either before or after the offense committed. *Id.* at *35. *McKnight,* 658 N.E.2d at 560–61. Considering these common law definitions of principals and accessories, we note that the defendant, who at least aided in the killing of Davis and was actively present at the time of the crime, would be a principal, not an accessory. Thus, the defendant's argument would not prevail even using the common law designations.

law terms of principal and accessory, it also supersedes the application of the common law doctrine of mandated consistency when defendants are convicted under this statute. *See Johnson*, 687 N.E.2d at 349; *McKnight*, 658 N.E.2d at 561. *See also Rainey v. State*, 572 N.E.2d 517, 519 (Ind.Ct.App.1991) ("[T]his rule [of mandated consistency], reflecting logical consistency, was modified by the 1977 legislative enunciation of a public policy change which reflects a view that each defendant and each trial shall be considered and treated separately and independently.") (citing IND.CODE § 35–41–2–4); *Williams v. State*, 406 N.E.2d 263, 264 (Ind.Ct.App.1980) ("[R]egardless of its desirability, this common law rule was abrogated with the passage of Ind.Code 35–41–2–4, effective October 1, 1977."). Because under the accomplice liability statute, any accomplice to a crime may be tried and convicted upon sufficient proof, regardless of whether other accomplices were prosecuted, convicted, or acquitted, the doctrine of mandated consistency is inapplicable. *See Johnson*, 687 N.E.2d at 350 (citing IND.CODE § 35–41–2–4).

■ In discussing the application of our accomplice liability statute, we have noted that there is no separate crime of being an accessory to a crime or aiding and abetting the perpetrator of a crime; rather, a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime. *Morrison v. State*, 686 N.E.2d 817, 819 (Ind.1997); *Taylor v. State*, 495 N.E.2d 710, 713 (Ind.1986); *Hoskins v. State*, 441 N.E.2d 419, 425 (Ind.1982). Under this statute, "an actor who would have been considered an accessory under the common law now vicariously commits the actual offense," and "individuals convicted of felonies in Indiana are considered to have been convicted on the weight of their own actions even if the accomplice liability statute is utilized by the court or jury to determine guilt." *Johnson*, 687 N.E.2d at 349 (citations omitted). Furthermore,

"[a]n accomplice may be tried and convicted when the proof of the underlying crime is sufficient despite the fact that the other actor is not prosecuted, not convicted, or even acquitted." *Id.* at 350 (citing IND. CODE § 35–41–2–4). Under the statute, the individual who aids another person in committing a crime is as guilty as the actual perpetrator. *Morrison*, 686 N.E.2d at 819. *See also Whittle v. State*, 542 N.E.2d 981, 991 (Ind.1989) ("[T]here is no distinction between the responsibility of a principal and an accomplice. Thus, one may be charged as a principal yet convicted as an accomplice.") (citations omitted), *overruled on other grounds by Scisney v. State*, 701 N.E.2d 847, 848 (Ind.1998).

■ The defendant invokes Article I, Section 23 of the Indiana Constitution, claiming that his conviction for the murder of Davis violates this provision by allowing the principal, Mills, whom the defendant contends is the actual killer, "the privilege of being convicted of a lesser crime than his non-killing accomplice." Brief of Defendant–Appellant at 11. The defendant urges that, "within the narrow confines of [this] case, allowing an accessory to be punished more severely than the actual killer is not reasonably related to the legislative distinction between accessories and principals." Brief of Defendant–Appellant at 11.

■ Article I, Section 23 of the Indiana Constitution provides that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." In reviewing an alleged violation of the Privileges and Immunities Clause, we apply the following test:

Article 1, Section 23 of the Indiana Constitution imposes two requirements upon statutes that grant unequal privileges or immunities to differing classes of persons. First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the un-

equally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

*Collins v. Day,* 644 N.E.2d 72, 80 (Ind. 1994).

Contrary to the defendant's assertion that the statute establishes a "legislative distinction between accessories and principals," Brief of Defendant–Appellant at 11, the accomplice liability statute neither establishes separate classes nor accords disparate treatment to Indiana citizens or classes of citizens. Rather, the effect of the statute is just the opposite. It removes the common law distinctions between principals and accessories, between principals in the first degree and principals in the second degree, and between accessories before the fact and accessories after the fact, and renders all participants in the perpetration of a crime accomplices who are equally responsible for the criminal acts.[4]

Under the first part of the *Collins* test, even if we accept the defendant's contention that, as applied in this case, the statute grants the actual killer "the privilege of being convicted of a lesser crime than his non-killing accomplice" and thereby accords disparate treatment to two classes, Brief of Defendant–Appellant at 11, we disagree with the defendant's claim that the statute's disparate treatment "is not reasonably related" to the inherent characteristics that distinguish the unequally treated classes, Brief of Defendant–Appellant at 11. To the contrary, a reasonable relationship could exist between such disparate treatment and the inherent characteristics that distinguish the unequally treated classes. In cases tried separately, the evidence may vary, and different juries may independently determine that participants in the perpetration of a crime exhibited different levels of culpability. In such an instance, each defendant's guilt is determined based on the evidence presented at each separate trial. The defendant's claim fails under *Collins.*

We hold, therefore, that the accomplice liability statute, even as applied in this case, does not violate the Privileges and Immunities Clause of the Indiana Constitution.

## II. Consecutive Sentences

The defendant also challenges his sentence, contending that the trial court, in ordering the sentences to run consecutively, failed to find an aggravating circumstance. He asks that we remand his case to the trial court to state its reasons for imposing consecutive sentences or, alternatively, to modify the sentence.

 In order to impose consecutive sentences, a trial court must find at least one aggravating circumstance. *Jones v. State,* 705 N.E.2d 452, 455 (Ind.1999); *Mitchem v. State,* 685 N.E.2d 671, 680 (Ind.1997). Aggravating circumstances may include, but are not limited to, any of several statutorily enumerated factors. IND.CODE § 35-38-1-7.1. In its sentencing statement, the trial court acknowledged the defendant's claim of mitigating circumstance, but nevertheless imposed the presumptive sentence for each of the two murder convictions, noting as to each murder that to suspend any part of the sentence would "lessen the seriousness" of this offense. Record at 1025. The court then ordered that the sentences for the two murders be served consecutively because they "are crimes of violence." Record at 1026. This articulation falls short of the requirement that a trial court's sentencing statement identify, explain, and evaluate any aggravating circumstances used to impose consecutive sentences. IND.CODE § 35-50-1-2. *See Mitchem,* 685 N.E.2d at 678.

4. *See also* IND.CODE § 35-44-3-2 (regarding the crime of assisting a criminal).

Upon determining that a trial court improperly applied a justification for enhanced or consecutive sentences, however, this Court may exercise its power to review and revise the sentence. *See Mitchem*, 685 N.E.2d at 680. As in *Mitchem*, we find that consecutive sentences are warranted here because of the multiple separate and distinct criminal acts. The defendant and his accomplice first strangled Brenda Cunningham with a towel in her home and then fatally beat, choked, and suffocated Christal Davis in her home a few blocks away. We find that the violent and protracted nature and circumstances of these separate murders constitute aggravating circumstances. The defendant's intoxication during the commission of the murders, his voluntary surrender and cooperation with law enforcement, and his remorse warrant consideration as mitigating circumstances. We conclude, however, that the mitigation is clearly outweighed by the fact of two extremely violent murders, each separately committed. We find that it is appropriate, under the circumstances, for the defendant's sentences to be served consecutively.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and BOEHM and RUCKER, JJ., concur. SULLIVAN, J., concurs in result in Part I and concurs in Part II.