**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SCOTT L. BARNHART**
Keffer Barnhart, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER BELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A04-1309-CR-478 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82D02-1209-MR-1149

**May 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Christopher Bell appeals his convictions for murder and Class C felony conspiracy to commit robbery for his role in the shooting death of Cedric Watt. He argues that the trial court erred in instructing the jury on accomplice liability and that his convictions violate Indiana's constitutional prohibition against double jeopardy. Finding that the trial court did not abuse its discretion in instructing the jury and that there is no double-jeopardy violation, we affirm.

**Facts and Procedural History**

In September 2012 twenty-two-year-old Bell and his pregnant girlfriend Angie Mueller ("Angie") lived with their two young children in Evansville, Indiana. Other people lived with them, too: Angela Moore, Dylan Knott, and occasionally Angie's brother Ted Mueller, Jr. ("T.J.").

Also in September 2012 Watt was a marijuana dealer who lived across the Ohio River in Henderson, Kentucky. On September 16, Watt "re-upped," which means to purchase more marijuana. Tr. p. 196. Specifically, Watt purchased fourteen grams of "dro," which "is the best marijuana you can get." *Id.* at 195. Watt carried thirteen of these grams on his person. Watt contacted his friend Shawn Kohlmeyer to see if Shawn could find him a ride to Evansville.

Shawn called T.J. around midnight to see if T.J. would give Watt a ride from Henderson to Evansville. Bell answered T.J.'s phone and asked Shawn if he knew where to get a gun. *Id.* at 155. Shawn said he did not know and told Bell he needed to speak with T.J. When T.J. got on the phone, Shawn said his friend would give him a gram of marijuana

2

and some gas money for a ride from Henderson to Evansville. T.J. instructed Bell to find out more about Shawn's friend. *Id.* at 128. Bell called T.J.'s younger brother to learn more. After Bell's phone conversation with T.J.'s younger brother, Bell reported that Watt was a "bit** a** ni**er." *Id.* at 129. Dylan, one of the roommates, was present during the conversations and assumed they were talking about a robbery. *Id.* Angie and T.J.'s aunt's boyfriend was also present, and he overheard Bell tell T.J.'s younger brother on the phone that he could "get [Watt] easy" because "he ain't got no weapon" and "he's basically a bit** [who's] easy to take." *Id.* at 204.

About thirty minutes later, T.J., Bell, and Angie picked up Shawn in Angie's minivan, and T.J. drove the group to Henderson to get Watt. After picking up Watt, they went to a gas station, and Watt gave T.J. $20 to get gas. The group then headed to Evansville, and everyone except Angie smoked some of the "dro" that Watt brought with him.

Back in Evansville, the group made some stops. The first stop was at a house on Walnut Street, where T.J. and Bell unsuccessfully tried to sell some of Watt's marijuana. After a stop on New York Street, T.J. drove the group to Delaware Street, which was near Shawn's girlfriend's house, and parked the van. Everyone except Angie got out of the van. T.J., Bell, Shawn, and Watt approached a house and sat on the porch. At some point, Bell started walking back to the van. Then, the rest of the group got up, with Shawn stating that he was going to walk to his girlfriend's house. As T.J. was walking behind Watt, he pulled a gun from his waistband and pointed it at Watt's neck; Watt ran. When Bell yelled "shoot," T.J. shot Watt as he ran. *Id.* at 39, 169. Watt fell to the sidewalk. T.J. ran up to

3

Watt's fallen body and hit him in the head with the gun. T.J., Bell, and Angie drove away in the minivan. Shawn ran to his girlfriend's house and called 911.

The Evansville Police Department received a report of shots fired around 3:00 a.m. on September 17. Officer Cara Mattingly was the first to respond and found Watt's lifeless body face-down on the sidewalk. Watt was shirtless, and his pants were pulled down below his waist. According to the pathologist who performed Watt's autopsy, Watt died from a bullet that entered the right side of his chest, pierced his heart and aorta, and exited the left side of his back. *Id.* at 110-12. Watt also sustained blunt force injuries to his left forehead, above his left ear, and to his right hand. A crime-scene detective recovered a small bag of marijuana from inside Watt's right hand. Watt's clothes were removed during the autopsy, and the detective recovered a pill bottle containing marijuana, electronic scales, and $10 in cash from his clothes.

After T.J. shot Watt, T.J., Bell, and Angie returned home. T.J. and Bell destroyed the cell phones that they had been using. T.J. and Bell then shaved their faces and took a shower in bleach. *Id.* at 45-46. They also bleached the clothes that they had been wearing and put them, along with the broken cell-phone pieces, in plastic grocery bags. They then drove around and threw the bags into various alleys. Bell instructed Angie not to say anything or he would kill her. *Id.* at 46.

The State charged Bell with murder and Class A felony conspiracy to commit robbery, which was elevated to a Class A felony because of serious bodily injury.[1] The

---

[1] The charging information alleged the following overt acts for the conspiracy charge: (1) T.J. possessed a gun and used the gun during the commission of the robbery of Watt and (2) T.J. fired the gun in the direction of Watt during the commission of the robbery of Watt. Appellant's App. p. 28-29.

State also alleged that Bell was a habitual offender. In addition, the State charged T.J. with murder and conspiracy to commit robbery, and a jury found T.J. guilty of both charges in March 2013.[2]

Bell's jury trial was held two months later in May 2013. The State's theory was that "there was some argument about the marijuana that . . . Watt had and [T.J.] pulled a gun and . . . Watt ran from him, [Bell] said shoot and [T.J.] shot him." *Id.* at 7. The trial court instructed the jury on murder and accomplice liability. The accomplice-liability instruction, Final Instruction No. 15, provided:

> A person who knowingly or intentionally aids another in committing a crime is guilty of that crime. In order to commit the crime of murder by aiding another person, the defendant must have knowledge that he is aiding the commission of the crime of murder. To be guilty, he does not have to personally participate in the crime nor does he have to be present when the crime is committed. Mere presence alone is not sufficient to prove the Defendant aided the crime. Failure to oppose the commission of the crime alone is also insufficient to prove that the Defendant aided the crime. However presence at the scene of the crime and failure to oppose the crime's commission are factors which may be considered in determining whether there was aiding another to commit the crime. Before you can convict the Defendant as an accessory the State must prove the elements of the crime and that the Defendant knowingly or intentionally aided another to commit the crime.

Appellant's App. p. 174. Bell objected to the accomplice-liability instruction on two grounds. First, Bell argued that he "was not charged with the offense aiding or inducing[,] he was charged with the offense of murder"; therefore, "the Court is instructing the jury on a crime with which Mr. Bell was never charged." Tr. p. 359. *But see Specht v. State*, 838 N.E.2d 1081, 1092 (Ind. Ct. App. 2005) ("It is well established that a person can be charged

---

[2] T.J.'s appeal is currently pending in this Court. *See Mueller v. State*, No. 82A05-1305-CR-240.

as a principal and convicted as an accomplice. The accomplice liability statute does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged." (quotations omitted)), *trans. denied*. Second, Bell argued that the evidence did not support giving the instruction. Tr. p. 359.

The jury found Bell guilty as charged. Bell then stipulated to having two prior unrelated felonies and was adjudicated a habitual offender without the jury reconvening. *Id.* at 362-63. At Bell's sentencing hearing, the trial court found that double-jeopardy concerns prevented it from entering judgment on the conviction for conspiracy to commit robbery as a Class A felony because the serious bodily injury was the shooting death of Watt; therefore, the court reduced the conviction to a Class C felony. *Id.* at 370-71. The court then sentenced Bell to sixty years for murder, enhanced by thirty years for being a habitual offender. The court also sentenced Bell to a concurrent term of six years for Class C felony conspiracy to commit robbery, for an aggregate sentence of ninety years.

Bell now appeals.

**Discussion and Decision**

Bell raises two issues on appeal. First, he challenges the trial court's accomplice-liability instruction. Second, he contends that his convictions for murder and conspiracy to commit robbery violate Indiana's constitutional prohibition against double jeopardy because both convictions were based on the shooting.

**I. Accomplice-liability Instruction**

Bell challenges the trial court's accomplice-liability instruction. The manner of instructing a jury lies largely within the sound discretion of the trial court, and we review

6

the trial court's decision only for an abuse of that discretion. *Boney v. State*, 880 N.E.2d 279, 293 (Ind. Ct. App. 2008), *trans. denied*. In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Id.*

The trial court gave the following instruction, Final Instruction No. 15, on accomplice liability:

> A person who knowingly or intentionally aids another in committing a crime is guilty of that crime. In order to commit the crime of murder by aiding another person, the defendant must have knowledge that he is aiding the commission of the crime of murder. To be guilty, he does not have to personally participate in the crime nor does he have to be present when the crime is committed. Mere presence alone is not sufficient to prove the Defendant aided the crime. Failure to oppose the commission of the crime alone is also insufficient to prove that the Defendant aided the crime. However presence at the scene of the crime and failure to oppose the crime's commission are factors which may be considered in determining whether there was aiding another to commit the crime. Before you can convict the Defendant as an accessory the State must prove the elements of the crime and that the Defendant knowingly or intentionally aided another to commit the crime.

Appellant's App. p. 174.[3] Bell objected to this instruction because (1) he was not charged as an accomplice and (2) the instruction was not supported by the evidence. Tr. p. 359. However, Bell now claims for the first time on appeal that this instruction is an incorrect statement of the law. A defendant who objects to an instruction on one ground at trial may not argue a different ground on appeal. *Morgan v. State*, 755 N.E.2d 1070, 1077 (Ind.

---

[3] This was the only jury instruction that addressed accomplice liability. Because Bell objected that an accomplice-liability instruction should not be given at all in this case, he presumably did not tender an alternate instruction. But because there is evidence in the record that Bell yelled for T.J. to "shoot" Watt, there is evidence in the record to support giving an accomplice instruction.

2001).  The rationale behind the rule requiring a party to identify the specific grounds for objection at the time of trial is so that the trial court has every opportunity to avoid error that might otherwise require reversal and result in a miscarriage of justice and a waste of time and resources.  *Kane v. State*, 976 N.E.2d 1228, 1231 (Ind. 2012).  Bell's argument is therefore waived.[4]  *See Morgan*, 755 N.E.2d at 1077.

Waiver notwithstanding, we address Bell's appellate arguments.  He first argues that the instruction is an inaccurate statement of the law because it omits the terms "induces" and "causes."  Indiana's accomplice-liability statute, Indiana Code section 35-41-2-4, provides:

> A person who knowingly or intentionally aids, induces, *or* causes another person to commit an offense commits that offense, even if the other person:
> (1) has not been prosecuted for the offense;
> (2) has not been convicted of the offense; or
> (3) has been acquitted of the offense.

(Emphasis added).  According to Section 35-41-2-4, a person must aid, induce, *or* cause another person to commit the offense.  All three acts are not required.  The pattern jury instruction on accomplice liability tracks the language of the statute and provides, in part:

> A person[] who knowingly or intentionally [aids] [induces] [causes] another person to commit an offense commits that offense.  (A person may be convicted  of [aiding] [inducing] [causing] [*name offense*] even if the other person has not been prosecuted for the [*name offense*], has not been convicted of the [*name offense*], or has been acquitted of the [*name offense*].)

1 Ind. Pattern Jury Instructions (Criminal) No. 2.11 (1/2014).  As the pattern jury instruction illustrates by the brackets, it is not necessary that the trial court use all three words in its instruction.  Rather, the trial court can select one, two, or all three words.  Here,

---

[4] Bell appears to acknowledge that this issue is waived.  *See* Appellant's Reply Br. p. 1 n.1.

the trial court chose to use the single word "aids." Including only the word "aids" in the jury instruction is not "an incomplete recitation of what it means to be an accomplice," as Bell argues on appeal. *See* Appellant's Br. p. 7.

Bell also appears to argue that the instruction is deficient because he did not "aid" T.J. in shooting Watt—rather, he "induced" T.J. to shoot Watt—but the trial court did not include "induces" in Final Instruction No. 15. In fact, Bell goes so far as to concede that he induced T.J. to shoot Watt. *See id.* at 7-8 ("If anything, the testimony and allegations made [by] Angie and [Shawn] indicate that Bell induced [T.J.]."); Appellant's Reply Br. p. 1 ("If anything, Bell's alleged statement enticed or persuaded [T.J.] to shoot."). Even assuming that Bell's actions in yelling "shoot" to T.J. do not meet the definition of "aid," Bell does not explain how a new trial, which would presumably include "induces" in the accomplice-liability instruction, would help his cause given his concession that he induced T.J. to shoot Watt.[5]

Finally, Bell argues that Final Instruction No. 15 erroneously used "accessory" instead of "accomplice" in the final sentence. The final sentence provided:

> Before you can convict the Defendant as an accessory the State must prove the elements of the crime and that the Defendant knowingly or intentionally aided another to commit the crime.

Appellant's App. p. 174. Our Supreme Court explained in *Sanquenetti v. State* that "there is no separate crime of being an accessory to a crime or aiding and abetting the perpetrator of a crime; rather, a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime." 727 N.E.2d 437, 441 (Ind. 2000).

---

[5] Bell makes no independent argument that the evidence is insufficient to convict him of aiding in Watt's murder.

9

Under the accomplice-liability statute, "an actor who would have been considered an accessory under the common law now vicariously commits the actual offense . . . ." *Id.* (quotation omitted).

Although it would have been better for the trial court to have used "accomplice" instead of "accessory" in the final sentence, this single word did not play a large role in Final Instruction No. 15 as a whole, did not change the substance of the instruction, and therefore did not mislead the jury. Accordingly, the trial court did not abuse its discretion in instructing the jury in Final Instruction No. 15.

## II. Double Jeopardy

Bell contends that his convictions for murder and conspiracy to commit robbery violate Indiana's constitutional prohibition against double jeopardy because both convictions were based on the shooting. *See* Appellant's Br. p. 11 ("[T]here is a reasonable possibility that the jury used the same evidence, specifically the shooting, to convict Bell of both offenses."). He claims that this violates Indiana's actual-evidence test. To show that two challenged offenses constitute the same offense under the actual-evidence test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002). Application of the actual-evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering, where relevant, the jury instructions, argument of counsel, and other factors that may have guided the jury's determination. *Id.*

10

Under the actual-evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. *Id.* at 833.

To convict Bell of murder, the State had to prove that he knowingly killed Watt. Appellant's App. p. 28, 162. The State did so using the accomplice-liability theory. *Id.* at 174. To convict Bell of conspiracy to commit robbery, the State had to prove that Bell, with the intent to rob Watt, agreed with T.J. to commit robbery and that either Bell or T.J. performed an overt act in furtherance of the agreement. Ind. Code § 35-41-5-2; Appellant's App. p. 28. The charging information alleged an agreement by Bell and T.J. to rob Watt of marijuana and listed the following overt acts: (1) T.J. possessed a gun and used the gun during the commission of the robbery against Watt and (2) T.J. fired the gun in the direction of Watt during the commission of the robbery against Watt. Appellant's App. p. 28-29. Both overt acts were reflected in the trial court's preliminary and final instructions to the jury. Bell argues on appeal that it "was not until final instructions that the Court informed the jury that the overt act in furtherance of the agreement could have been the possession of the weapon or firing of that weapon in the direction of Watt." Appellant's Br. p. 10-11. However, Preliminary Instruction No. 4 reviewed the charging informations and alleged that Bell or T.J. performed one of the following overt acts in furtherance of the agreement:

> (1) Ted Mueller, Jr., possessed a revolver and used the revolver during the commission of the Robbery against the victim, Cedric Watt.

> (2) Ted Mu[e]ller, Jr., fired the revolver in the direction of the victim, Cedric Watt, during the commission of the [R]obbery of Cedric Watt.

Appellant's App. p. at 85 (numbering altered). Final Instruction No. 4 then provided:

Before you may convict the Defendant, the State must have proved each of the following elements beyond a reasonable doubt:

The Defendant

1. with the intent to commit the crime

2. agreed with another person, Ted Mueller. Jr., to commit the crime of robbery

3. Ted Mueller, Jr., or Christopher Bell knowingly performed an overt act in furtherance of the agreement by possessing a revolver *or* firing the revolver in the direction of Cedric Watt during the commission of a robbery.

\* \* \* \* \*

*Id.* at 163 (emphasis added).[6]

Considering the charging informations and jury instructions, the crimes were proved by at least one fact not essential to the other. Only the murder was proved by Watt's death, and Watt's death did not prove any element of conspiracy. Although the conspiracy to commit robbery was charged as a Class A felony because of serious bodily injury to Watt, the trial court's decision to reduce the conviction to a Class C felony removed any element of serious bodily injury. The overt acts alleged in the charging information to prove the conspiracy were T.J.'s possession and firing of the gun, not Watt's death. And the overt acts were not proved by the same evidence that proved Bell's accomplice liability for murder. The evidence that Bell aided T.J. to murder Watt was Angie's and Shawn's testimony that Bell yelled "shoot" just before T.J. shot Watt. Bell's directing T.J. to shoot

---

[6] Bell alleges that the final instruction "varies" from the previous instructions, but he does not illustrate how. We note that the conspiracy charging information and Preliminary Instruction No. 4 allege, for the first overt act, that T.J. "possessed" and "used" the gun while Final Instruction No. 4 alleges, for the first overt act, that T.J. just "possessed" the gun. This is to be contrasted with the second overt act, which has consistently alleged that T.J. "fired" the gun.

was not the same evidence as T.J.'s possession and firing of the gun. The offenses of murder and conspiracy to commit robbery were each established by proof of a fact not used to establish the other offense. Bell has thus failed to demonstrate a violation of the Indiana Double Jeopardy Clause under the actual-evidence test.[7] *See Spivey*, 761 N.E.2d at 833-34.

Affirmed.

NAJAM, J., and BROWN, J., concur.

---

[7] To the extent that Bell suggests that jury unanimity is required when more than one overt act is alleged, he is incorrect. *See Cliver v. State*, 666 N.E.2d 59, 67 (Ind. 1996), *reh'g denied*.