## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 19 2016, 6:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Tara Coats Hunt
Johanna D. Rippey
Salem, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Leah S. Fink,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 19, 2016

Court of Appeals Case No.
31A01-1510-CR-1704

Appeal from the Harrison Superior Court

The Honorable Joseph L. Claypool, Judge

The Honorable Frank Newkirk, Jr., Special Judge

Trial Court Cause No.
31D01-1108-FB-688

**Altice, Judge.**

**Case Summary**

[1] Leah Fink appeals, on sufficiency grounds, her convictions for class B felony dealing in methamphetamine and class D felony possession of chemical reagents or precursors with intent to manufacture methamphetamine. Additionally, she challenges the ten-year advisory sentence imposed for her dealing conviction, contending that the trial court abused its discretion by failing to consider certain mitigating factors and that the sentence is inappropriate in light of her character and the nature of the offense.

[2] We affirm.

## Facts & Procedural History

[3] On August 15, 2011, Michael Marshall, working as a confidential informant for the Harrison County Sheriff's Department, participated in a controlled buy that was audio/video recorded. He called and arranged to purchase one gram of methamphetamine for $100 at Fink's home in Corydon. Jeremy Ripperdan was Fink's boyfriend at the time and often stayed at her home. Marshall knew both Fink and Ripperdan.

[4] When Marshall arrived that evening, Fink answered the door and let him in. Marshall immediately smelled a very strong chemical odor, which he associated with a "shake and bake meth lab." *Transcript* at 126. Ripperdan told Fink to send Marshall upstairs. Ripperdan met Marshall on the stairs holding an active meth lab. The two men went to the small upstairs area to continue with the manufacturing process, while Fink stayed downstairs. On two separate occasions Ripperdan directed Marshall to obtain necessary items from Fink.

She provided Marshall with glue sticks and tubing, which were then used in the manufacturing process. Ripperdan and Marshall eventually came down to the kitchen to finish the process using the oven. Although Fink was not involved in the majority of the manufacturing process that evening, she was aware that it was occurring and was "actively involved" in providing materials for the process. *Id*. at 128. Marshall eventually left the home with a portion of the finished product that he obtained from Ripperdan in exchange for the $100 in buy money.

[5] After the controlled buy, law enforcement sought and obtained a search warrant for Fink's home. The warrant was executed in the early morning hours of August 16, 2011. During the execution of the warrant, officers located an active meth lab in a closet under the stairwell consistent with the shake-and-bake or one-pot method. The vessel contained organic solvents and lithium. Items associated with the production and use of methamphetamine were found throughout the small house, in an outbuilding, and in a burn bin outside the house. Officers found an open cold pack that contained ammonium nitrate, burned blister packs of pseudoephedrine, burned lithium battery remnants, drain opener containing sodium hydroxide, muriatic acid, plastic tubing, an HCL generator, coffee filters with white residue found both upstairs and in the bedroom, a glass pipe with white residue, and glass jars with white residue. Inside Fink's purse officers found marijuana, methamphetamine, syringes, a straw, rolling paper, nylon rope, and scissors. Fink's wallet also contained three receipts for purchases of pseudoephedrine. The two most recent

purchases were about seven hours apart on the same day, August 5, 2011, at stores in Indiana and Kentucky.[1]

[6] On August 18, 2011, the State charged Fink with seven counts: Count I, class B felony dealing in methamphetamine; Count II, class D felony possession of methamphetamine; Count III, class D felony maintaining a common nuisance; Count IV, class D felony possession of a hypodermic needle; Count V, class D felony possession of chemical reagents or precursors with the intent to manufacture controlled substances; Count VI, class A misdemeanor possession of marijuana; and, Count VII, class A misdemeanor possession of marijuana. After numerous continuances, Fink's jury trial was held on August 19 and 20, 2015. Fink acknowledged, through counsel, that she was a drug user who committed Counts II, III, IV, VI, and VII. Fink contested only Counts I and V, which involved manufacturing of methamphetamine. The jury found Fink guilty on all counts.

[7] At the conclusion of the sentencing hearing on September 24, 2015, the trial court sentenced Fink to concurrent terms of ten years for Count I with two years suspended to probation, 545 days for each of Counts II through V, and 365 days for Counts VI and VII. Thus, Fink received an aggregate sentence of

---

[1] Ripperdan testified that he did not recall if Fink provided the pseudoephedrine used in this particular manufacturing process. National purchase logs, maintained by NPLEx, revealed that Fink regularly purchased (about twice a month) pseudoephedrine in the nine months prior at various locations in Indiana and Kentucky. Based on her training and experience, Sergeant Katrina Smith testified that these purchases, though legal, raise a red flag to law enforcement.

ten years in prison with eight executed and two suspended to probation. Fink appeals her convictions on Counts I and V and the sentence imposed for Count I. Additional facts will be provided below as needed.

## Discussion & Decision

### Sufficiency of the Evidence

[8] Our standard of review for sufficiency of the evidence claims is well settled. We consider only the probative evidence and reasonable inferences supporting the conviction. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence, and we will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence will be found sufficient if an inference may reasonably be drawn from it to support the conviction. *Id.* at 147.

[9] With respect to Count I, dealing methamphetamine, Fink argues that the State failed to present sufficient evidence under its theory of accomplice liability. She asserts that, at best, the State proved that she was present in her home while Ripperdan manufactured methamphetamine with her knowledge.

[10] In relevant part, Ind. Code § 35-48-4-1.1(a)(1) provides that a person who knowingly or intentionally manufactures methamphetamine commits dealing in methamphetamine. Here, the State sought to convict Fink as an accomplice.

To do so, the State needed to prove that Fink knowingly or intentionally aided Ripperdan in manufacturing methamphetamine. *See* Ind. Code § 35-41-2-4. There is no separate crime of being an accessory or aiding and abetting the perpetrator of a crime; rather a defendant may be convicted as a principal upon evidence that he aided or abetted in the perpetration of the charged crime. *Sanquenetti v. State,* 727 N.E.2d 437, 441 (Ind. 2000). Under Indiana law, an individual who aids another person in committing a crime is as guilty as the actual perpetrator, and one may be charged as a principal yet convicted as an accomplice. *Id.* Further, the accomplice need not participate in each and every element of the crime in order to be convicted of it. *Vandivier v. State*, 822 N.E.2d 1047, 1054 (Ind. Ct. App. 2005), *trans. denied*.

[11] Although a defendant's presence during the commission of the crime or her failure to oppose the crime are, by themselves, insufficient to establish accomplice liability, the jury may consider them along with other facts and circumstances tending to show participation. *Id.* The jury may also consider the defendant's companionship with the one engaged in the crime and the defendant's actions before, during, and after the crime. *Id.* "In order to sustain a conviction as an accomplice, there must be evidence of the defendant's affirmative conduct, either in the form of acts or words, from which an inference of common design or purpose to effect the commission of a crime may reasonably be drawn." *Id.*

[12] We cannot agree with Fink that there is "no evidence of affirmative conduct by [her] from which an inference could be drawn that her purpose was to aid in the

commission of a crime." *Appellant's Brief* at 9. The evidence favorable to the conviction establishes that Fink, on at least two separate occasions, provided materials needed for the manufacturing process that night. Specifically, she provided Marshall and Ripperdan with glue sticks and tubing. In addition to her active participation, we note that the manufacturing process took place with her knowledge in her home, and items used in the manufacturing process – glass jars and coffee filters, both containing methamphetamine residue – were found in her bedroom during the subsequent search. The State also presented evidence that Fink was a regular purchaser of pseudoephedrine, a key ingredient in the manufacturing process, and about a week before the instant crime made two purchases on the same day but in two different states. While the State could not affirmatively establish that these purchases were used in this manufacturing process, the jury could consider this evidence and determine what weight to give it. In light of all of the above evidence, the jury had ample evidence to find Fink guilty of dealing methamphetamine.

[13] We now turn to the sufficiency of the evidence regarding Count V, possession of chemical reagents or precursors with intent to manufacture a controlled substance. The State alleged that Fink possessed ammonia nitrate, lithium metal, and organic solvents, all statutorily defined as chemical reagents or precursors. *See* I.C. § 35-48-4-14.5.

[14] With regard to Count V, the State was required to prove that Fink possessed two or more chemical reagents or precursors with the intent to manufacture a controlled substance. *See* I.C. § 35-48-4-14.5(e). Fink acknowledges that the

State presented evidence at trial that police discovered ammonium nitrate in a container in a garage/outbuilding, lithium metal in a burn barrel and in the one-pot vessel found in a closet, and organic solvent found in the one-pot vessel. Her sole challenge to her conviction on this count is that the State failed to prove that she constructively possessed these items. In this regard, she simply notes that she did not have exclusive control over the areas in which the items were found and asserts that the State failed to establish that she had actual knowledge of the presence of these items.

[15] Constructive possession occurs when a person does not have direct physical control over the item but has "the intent and capability to maintain dominion and control over the item." *Massey v. State*, 816 N.E.2d 979, 989 (Ind. Ct. App. 2004) (quoting *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999)). Fink does not argue that she did not have the capability to maintain dominion and control over the precursors. Rather, her argument focuses only on intent.

[16] To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband. *Id*. Where control over the premises containing the contraband is non-exclusive, knowledge may be inferred from evidence of additional circumstances pointing to the defendant's knowledge. *Id*. Such additional circumstances may include: "(1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) the contraband being in plain view; and (6) the location of the contraband being in close proximity to items owned by the defendant." *Harrison v. State*, 32

N.E.3d 240, 248 (Ind. Ct. App.), *trans. denied*. Further, a defendant can be found to have jointly possessed contraband with another. *Massey v. State*, 816 at 989.

[17] The State presented evidence from which the jury could infer that Fink had knowledge of the presence of the precursors on her property. The record is replete with evidence that her home was a drug manufacturing setting and used as such with Fink's knowledge and involvement. Accordingly, Fink's slender sufficiency argument fails.

## Sentencing

[18] With regard to sentencing, Fink initially contends that the trial court abused its discretion when it failed to consider certain mitigating circumstances. Specifically, she asserts that the trial court failed to consider her minimal role in the manufacturing process, the fact that the crime was the result of circumstances unlikely to recur, and the fact that she had already suffered an extraordinary penalty in that she lost her ability to practice law.

[19] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* One way a trial court may be found to have abused its discretion is by entering a sentencing statement that omits

reasons clearly supported by the record and advanced for consideration. *Id*. at 490-91. When claiming on appeal that the trial court failed to identify or find a mitigating circumstance, it is the defendant's burden to establish that the mitigating evidence is both significant and clearly supported by the record. *Id*. at 493.

[20] Because a court may impose any sentence authorized by statute "regardless of the presence or absence of aggravating circumstances or mitigating circumstances," a trial court is no longer obligated to weigh aggravating and mitigating factors against each other when imposing a sentence. *See Richardson v. State,* 906 N.E.2d 241, 243 (Ind. Ct. App. 2009). If the trial court finds the existence of aggravating or mitigating circumstances, it must give a "statement of the court's reasons for selecting the sentence that it imposes." Ind. Code § 35-38-1-3; *see also Anglemyer,* 868 N.E.2d at 491 ("trial court must enter a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence"). On review, we may examine both the written and oral sentencing statements to discern the findings of the trial court. *See Vaughn v. State*, 13 N.E.3d 873, 890 (Ind. Ct. App. 2014), *trans. denied*.

[21] In this case, the trial court entered a detailed, thoughtful oral sentencing statement followed by a written sentencing statement. It is apparent to us that the trial court considered each of the proffered mitigating circumstances that Fink now argues on appeal. Specifically, after observing that Fink's conduct was the result of an addiction that developed during a painful medical

condition, the court acknowledged Fink's minimal role in the crime.[2] *Cf. Roney v. State*, 872 N.E.2d 192, 205 (Ind. Ct. App. 2007) (finding an abuse of discretion where "trial court did not discuss [the defendant's] lesser role either at the sentencing hearing or in its sentencing statement"), *trans. denied.* Similarly, the trial court addressed the fact that Fink had lost her legal career "which is a very severe consequence of her conduct."[3] *Appendix* at 518. Finally, the trial court considered and expressly rejected the proffered mitigator that the crime was the result of circumstances unlikely to recur, aptly noting "the power of drug addiction and the fact that [Fink] was arrested again during her pretrial release." *Id.*

[22] Fink has failed to establish an abuse of discretion. Accordingly, we turn to Fink's claim that her ten-year advisory sentence with two years suspended to probation was inappropriate in light of her character and the nature of the offense.

[23] Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize

---

[2] The court observed that it was clear Ripperdan was the person "doing the most active manufacturing and that [Fink's] role in that was minimal." *Transcript* at 582.

[3] At the sentencing hearing, the trial court observed further:

> I take note of the fact that when some people are sitting in your seat they will go back to their job painting houses…and your life is forever changed because of this in a way which is gonna cost you many thousands of dollars and the, your pride and respect in the community. And so I know you've already suffered a penalty, which many people would not have suffered at this point.

*Transcript* at 587.

independent appellate review and revision of a sentence imposed by the trial court. *Alvies v. State,* 905 N.E.2d 57, 64 (Ind. Ct. App. 2009). This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Nevertheless, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State,* 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The appellant bears the burden of persuading us that her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006).

[24] With respect to the character of the offender, Fink notes that she had no prior criminal history, her conduct was the result an addiction arising out of a painful medical condition, and she had a low risk of reoffending. This is juxtaposed, however, with the fact that while the instant case was pending, Fink was arrested on similar charges, also involving Ripperdan (with whom she had been ordered to have no contact), in another county in June 2014.

[25] Turning to the nature of the offense, Fink emphasizes her minimal role in the manufacturing process. While she certainly had a minor role in the actual manufacturing, the record indicates that she allowed her home to be the setting of Ripperdan's drug labs. It is evident that this was not a one-time event, as the

home contained drug paraphernalia, items used to manufacture methamphetamine, marijuana, and methamphetamine in various stages of the manufacturing process. Further, it can be inferred from the record that Fink regularly provided Ripperdan with pseudoephedrine used in his manufacturing activities and may have financed his manufacturing to support her drug habit.

[26] As noted previously, Fink's sentences were all ordered to be served concurrently and, with respect to the highest level offense, she received the advisory sentence, which was partially suspended. Considering Fink's character and the nature of her offense, we do not find inappropriate her aggregate sentence of ten years with two suspended to probation for seven drug-related counts.

[27] Judgment affirmed.

[28] Bradford, J. and Pyle, J., concur.